JUDGMENT ENTRY.
This appeal is considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, and this Judgment Entry shall not be considered an Opinion of the Court pursuant to S.Ct.R.Rep.Op. 3.
Following a jury trial, defendant-appellant Andrew Bevins was convicted of escape, in violation of R.C. 2921.34(A), a felony of the second degree. The trial court sentenced Bevins to eight years' incarceration. Bevins now appeals.
In his first assignment of error, Bevins argues that the trial court erred in allowing the state to use a peremptory challenge to exclude an African-American from the jury panel in violation of Batson v.Kentucky.[1] In explaining her peremptory challenge, the prosecutor stated that the prospective juror "was not very responsive when I was asking her questions. Initially she didn't have any facial expressions, she didn't nod or acknowledge anything and also I didn't like her body language. She had her arms crossed and I didn't think she was candid with me. * * * I felt she wasn't being as open with me. I didn't excuse her because of her race. I felt it was because of her body language and she was not responding when I asked the initial questions." Because the state's proffered reasons were validly race-neutral,[2] we cannot say that the trial court's determination that Bevins had failed to prove purposeful racial discrimination was clearly erroneous.[3] Accordingly, we overrule the first assignment of error.
In his second assignment of error, Bevins argues that the trial court erred by denying him his right to represent himself. A criminal defendant must assert his right to self-representation in an unequivocal and timely manner, or it is waived.[4] Bevins claims that he properly invoked his right to self-representation on two occasions, the first time at a hearing held approximately one year before his trial date. At that hearing, Bevins asked the court to discharge his attorney, but then stated that he was going to have "his people to contact [an attorney], or maybe Legal Aid, or maybe the next time we're here — I might be undecided on whether I could get you to appoint me another attorney or something." The court continued the case to allow Bevins the time he needed to talk with his family and to see whether he could afford an attorney.
First, Bevins's request was not to represent himself, but to have his attorney discharged and to be given time to look into retaining another attorney. Even if we were to accept Bevins's assertion that his request at the hearing was to represent himself, that request was equivocal at best and therefore not a proper invocation of his right to self-representation.[5]
Bevins claims that he asserted his right to represent himself a second time on the date that he was to be tried on the escape charge, as well as on aggravated-burglary and rape charges. When his attorney asked for a continuance due to a family emergency, Bevins told the court that he could not "take it," and that he did not want to wait any longer to try the cases. The court pointed out that Bevins had a pending motion to act as co-counsel and continued the cases for trial. We note that Bevins did not object to his attorney's representation over the course of the next six months, during which time counsel represented him in a trial on the two unrelated charges, and the court continued to hold several hearings on the escape charge. Then, on the date that Bevins's escape charge was again set for trial, Bevins's attorney moved to withdraw from representation, and Bevins asked the court to continue the case again in order that he could have new counsel.
We note that Bevins's second request to represent himself was more in the nature of an "impulsive [act] expressing frustration" with his attorney's request for a continuance, rather than an unequivocal request to represent himself.[6] Moreover, Bevins waived his right to represent himself by accepting the continued assistance of defense counsel, requesting new counsel at a later time, and not raising the issue again.[7] Accordingly, we overrule the second assignment of error.
In his third assignment of error, Bevins argues that the court erred by requiring that he wear an electric immobilization belt at trial, in violation of his constitutional rights to a fair trial, due process of law, the presumption of innocence, and the effective assistance of counsel. The Ohio Supreme Court has "long recognized that `no one should be tried while shackled, absent unusual circumstances.'"[8]
Nevertheless, "shackling is left to the trial court's sound discretion."[9]
While a court is not required to hold a hearing on the necessity of restraints, the Ohio Supreme Court has noted that such a practice is encouraged.[10] "[I]t is widely accepted that a prisoner may be shackled where there is danger of violence or escape. The decision to impose such a restraint is left to the sound discretion of the trial court, which is in a position to consider the prisoner's actions both inside and outside the courtroom, as well as his demeanor while court is in session. We also note that a court need not sit by helplessly waiting for a defendant to commit a violent or disruptive act in the courtroom before being cloaked with the power to invoke extra security measures [citations omitted]."[11] In this case, the court did not hold a hearing on the necessity of restraints, but the record discloses facts that support the trial court's decision. We note that the escape charge stemmed from Bevins's actions during his arraignment on the aggravated-burglary and rape charges. At that hearing, Bevins had knocked down a deputy sheriff and had run out of the courtroom.
More than a year before his trial on the escape charge, Bevins had asked the court whether he might be able to be tried without the "shackles and taser belt." The court responded that it would not "press the issue for trial" as long as Bevins cooperated. However, over the course of the year before the escape trial, the record demonstrates that on several different occasions Bevins had refused to leave his jail cell to attend court proceedings, had refused to enter an elevator at the direction of deputy sheriffs, and had simply walked away from two court-appointed psychologists during their separate attempts to evaluate him.
As his escape trial was about to begin, Bevins complained to the court that he was uncomfortable wearing the electric belt as he sat in the courtroom. Bevins did not claim that the belt would affect the jury's perception of him[12] or that it impeded his ability to assist in his defense.[13] Under these circumstances, we cannot say that the trial court abused its discretion by ordering Bevins to wear the electric belt. We overrule the third assignment of error.
In his fourth assignment of error, Bevins argues that the trial court erred by imposing the maximum prison term of eight years for a second-degree felony.[14] Bevins contends that the court did not give reasons for its findings under R.C. 2929.14(C). This court has recently declared R.C. 2929.14(C) unconstitutional to the extent that it permits a sentencing court to impose a sentence exceeding the maximum term authorized by the facts admitted by the defendant or proved to a jury beyond a reasonable doubt.[15] Accordingly, we sustain the fourth assignment of error and modify Bevins's sentence to seven years' incarceration.
Therefore, the judgment of the trial court is affirmed, with the modification of Bevins's sentence to a term of seven years.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Painter and Hendon, JJ.
[1] (1986), 476 U.S. 79, 106 S.Ct. 1712.
[2] See State v. Brown, 8th Dist. No. 84059, 2004-Ohio-6862, at ¶ 27
(juror's body language and demeanor were permissible race-neutral explanations); State v. Hobbs, (May 25, 2001), 1st Dist. No. C-000516 (juror's evasiveness, unresponsiveness to questioning, and body language were valid, race-neutral reasons); State v. Moore (June 26, 1996), 1st Dist. No. C-950009 (juror's body language, among other reasons, was a valid, race-neutral reason); State v. Crosby (Mar. 26, 1997), 1st Dist. No. C-950903 (juror's lack of candor was a race-neutral reason).
[3] See State v. Hernandez (1992), 63 Ohio St.3d 577, 583,589 N.E.2d 1310, citing Hernandez v. New York (1991), 500 U.S. 352, 369,111 S.Ct. 1859.
[4] See State v. Cassano, 96 Ohio St.3d 94, 100, 2002-Ohio-3751,772 N.E.2d 81, at ¶ 38.
[5] See Cassano, supra, at ¶¶ 38-39; State v. Steele,155 Ohio App.3d 659, 665, 2003-Ohio-7103, 802 N.E.2d 1127, at ¶ 13.
[6] See Steele, supra, at 666, 2003-Ohio-7103, 802 N.E.2d 1127, at ¶ 20; citing Reese v. Nix (C.A.8, 1991), 942 F.2d 1276, 1280-1281; Jacksonv. Yist (C.A.9, 1990), 921 F.2d 882, 888-889.
[7] See Cassano, supra, at ¶ 42; Steele, supra, at ¶ 21.
[8] State v. Adams, 103 Ohio St.3d 508, 529-530, 2004-Ohio-5845,817 N.E.2d 29, at ¶ 104, citing State v. Kidder (1987), 32 Ohio St.3d 279,285, 513 N.E.2d 311.
[9] Id., citing State v. Richey, 64 Ohio St.3d 353, 358, 1992-Ohio-44,595 N.E.2d 915.
[10] See State v. Franklin, 97 Ohio St.3d 1, 19, 2002-Ohio-5304,776 N.E.2d 26, at ¶ 82.
[11] Id. at ¶ 79.
[12] The record shows that before his earlier trial on the two unrelated charges, Bevins had asked the court for permission to show the electric belt to the jury.
[13] See State v. Fitzpatrick, 1st Dist. No. C-030804, 2004-Ohio-5615, at ¶ 16.
[14] See R.C. 2929.14(A)(2).
[15] See State v. Bruce, 1st Dist. No. C-040421, 2005-Ohio-373.